1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   CHRISTOPHER J. CANNATA,

11                  Plaintiff,

12        v.

13   JAMES I. HOAG, *et al.*,

14                  Defendant.

CASE NO. 3:21-CV-5307-BJR-DWC

REPORT AND RECOMMENDATION
AND ORDER

Noting Date: **March 25, 2022**

15

16        Plaintiff filed a complaint under 42 U.S.C. § 1983. Dkt. 5. Before the Court are

17   Defendants' motion for summary judgment and Plaintiff's motion to strike arguments from

18   Defendants' motion for summary judgment. Dkts. 29, 36. As discussed below, the motion for

19   summary judgment should be granted in part and denied in part and the motion to strike should

20   be denied.

21                        **AMENDED COMPLAINT'S ALLEGATIONS**

22        Plaintiff's amended complaint heavily involves events that took place while he was

23   housed in the Intensive Management Unit ("IMU") of Stafford Creek Corrections Center

24

1  ("SCCC"). *See* Dkt. 27 at 2–3.[1] Plaintiff sues Defendants James I. Hoag, DDS, and Timothy

2  Taylor. *Id.* at 3–4. Defendant Dr. Hoag is a dentist for the Washington Department of

3  Corrections ("DOC") and was assigned to SCCC at most times relevant to the amended

4  complaint. *See id.* at 3; Dkt. 31 ¶ 3. Defendant Taylor is a Health Services Manger ("HSM") at

5  SCCC. Dkt. 27 at 3.

6      On August 26, 2019, Plaintiff arrived at SCCC's IMU. Between August 27, 2019 and

7  November 14, 2019, Plaintiff submitted several Health Services Kites ("HSK"). *Id.* at 5–16. The

8  thrust of the HSKs was that Plaintiff was allergic to Oraline Secure toothpaste, which was the

9  only toothpaste available through the IMU commissary. *See, e.g.*, *id.* at 5. Thus, Plaintiff sought

10  an alternative brand. *See, e.g.*, *id.* In response, Defendants stated that Plaintiff could brush his

11  teeth with a toothbrush and water to maintain dental health and noted that he had an upcoming

12  dental examination. *See, e.g.*, *id.* at 6, 12.

13      Defendant Dr. Hoag examined Plaintiff on November 8, 2019. *Id.* at 15, 50, 52.

14  Defendant Dr. Hoag would not provide Plaintiff with a "nonallergy alternative to the Oraline

15  Secure," "stating that he had been unable to identify any need for [it]." *Id.* at 15.

16      At some point, prisoner Kyntrel T. Jackson, who was also housed in SCCC's IMU, told

17  Plaintiff that he was allergic to Oraline Secure and had received "from Dental" "daily provisions

18  of an antibacterial mouthwash as a nonallergy alternative." *Id.* at 17. On December 9, 2019,

19  Plaintiff was transferred to Washington Corrections Center ("WCC"). *Id.*

20      Plaintiff alleges that Defendants violated the Eighth Amendment, by failing to provide

21  adequate medical care and failing to provide him with a basic personal hygiene item. *See id.* at

22

23  _____

24  [1] All page citations to CM/ECF entries refer to the page stamp number at the top, right-hand corner of the page.

REPORT AND RECOMMENDATION AND
ORDER - 2

1  18–19. Further, Plaintiff alleges that Defendant Dr. Hoag violated equal protection because he

2  refused Plaintiff's request for a nonallergy alternative to Oraline Secure but provided such an

3  alternative to prisoner Jackson. *Id.* at 19–20. Plaintiff adds that Defendant Dr. Hoag "acted with

4  deliberate indifference to Plaintiff's requests and needs for a nonallergy toothpaste (a

5  disability)," thus violating the Americans With Disabilities Act ("ADA"). *Id.* at 20. Plaintiff

6  seeks damages and declaratory relief. *Id.* at 20–21.

7                           **PROCEDURAL BACKGROUND**

8        Plaintiff filed his initial complaint in April 2021. Dkt. 1-1. Defendants answered. Dkt. 12.

9  On January 7, 2022, Plaintiff filed his amended complaint. Dkt. 27. Defendants answered. Dkt.

10 28. On January 6, 2022, Defendants moved for summary judgment. Dkt. 29. Plaintiff responded.

11 Dkt. 33. Defendants replied. Dkt. 34. Plaintiff then filed a surreply to the motion for summary

12 judgment and a motion to strike the motion for summary judgment. Dkts. 35–36.

13                        **SUMMARY JUDGMENT STANDARD**

14       Summary judgment is only proper where the materials in the record show that there is no

15 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

16 *See* Fed. R. Civ. P. 56(a), (c). "A 'material' fact is one that is relevant to an element of a claim or

17 defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac.*

18 *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted). A disputed

19 material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict

20 for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where

21 the record taken as a whole could not lead a rational trier of fact to find for the non-moving

22 party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

23 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

24

REPORT AND RECOMMENDATION AND
ORDER - 3

1  When reviewing a motion for summary judgment, the court must believe the nonmoving

2  party's evidence and draw all reasonable inferences in his or her favor. *T.W. Elec. Serv.*, 809

3  F.2d at 630–31. Also, the court must avoid weighing conflicting evidence or making credibility

4  determinations. *Id.* at 631.

5  "A summary judgment motion cannot be defeated by relying solely on conclusory

6  allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

7  (citation omitted). "Likewise, mere . . . speculation do[es] not create a factual dispute for

8  purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir.

9  1996) (citation omitted). Moreover, "[a] mere scintilla of evidence supporting the non-moving

10  party's position is insufficient[ to survive summary judgment]." *Rivera v. Philip Morris, Inc.*,

11  395 F.3d 1142, 1146 (9th Cir. 2005) (citation omitted).

12  **THE PARTIES' EVIDENCE**

13  The summary judgment record consists of Health Status Reports ("HSR") and responses,

14  dental records, grievances and responses, discovery responses, and declarations.[2] *See* Dkts. 27,

15  30–31; Dkt. 33 at 28–47. The Parties mostly rely on the same evidence to support their

16  respective positions, disputing the reasonable inferences to be drawn therefrom. So, unless

17  otherwise noted, the following material evidence is undisputed.

18

19

20  ───────────────

21  [2] Because Plaintiff signed his amended complaint under penalty of perjury, the Court
must treat it as a declaration. *See* Dkt. 27 at 25; *see also Lopez v. Smith*, 203 F.3d 1122, 1132

22  (9th Cir. 2000) (en banc) ("A plaintiff's verified complaint may be considered as an affidavit in
opposition to summary judgment if it is based on personal knowledge and sets forth specific

23  facts admissible in evidence." (citation omitted)).

24

1         On July 14, 2018, while housed in the IMU of Washington State Prison ("WSP"),

2   Plaintiff submitted an HSK. Dkt. 30-1 at 76. Plaintiff stated that, every time he used Oraline

3   Secure, his gums bled profusely and painful clusters of sores formed "all over the inside of [his]

4   mouth." *Id.* On the same day, nondefendant D. Bassham, DDS, told him to discontinue his use of

5   Oraline Secure. *Id.* On September 29, 2018, while housed in WSP's IMU, Plaintiff submitted an

6   HSK stating that, despite brushing with water and flossing, he was experiencing dental

7   discomfort and oral bleeding. *Id.* at 64. On October 3, 2018, nondefendant R. Rao, DDS, told

8   Plaintiff that a HSR had been generated for him to keep "Colgate toothpaste . . . on [his] person."

9   *Id.*; Dkt. 27 at 54. This HSR expired on October 2, 2019. Dkt. 27 at 54.

10        On October 29, 2018, while still housed in WSP's IMU, Plaintiff complained of dental

11  soreness. Dkt. 30-2 at 22. A dental hygienist evaluated him and stated that he had "massive food

12  impaction" in tooth #2. *Id.*

13        On December 10, 2018, while Plaintiff was housed at Monroe Correctional Complex,

14  Twin Rivers Unit ("MCC-TRU"), nondefendant V. Weber, DDS, examined him. Dkt. 30-2 at 16.

15  Dr. Weber found that Plaintiff had a "large, deep cavity" in tooth #2 and that it required

16  extraction. *Id.* Dr. Weber further found that Plaintiff had a small/moderate cavity in tooth #3. *See*

17  *id.* at 16, 19. A week later, Dr. Weber found Plaintiff to have pain with eating and throbbing

18  associated with tooth #2. *Id.* at 15.

19        On January 8, 2019, while at MCC's Special Offender Unit ("SOU"), nondefendant L.

20  Hale, DDS, examined Plaintiff in response to his complaints of an allergy to Oraline Secure and

21  increasing dental pain. *Id.* at 14. Dr. Hale diagnosed him with irreversible pulpitis in tooth #2 and

22  extracted that tooth. *Id.*

23

24

On July 25, 2019, while in WCC's IMU, Plaintiff submitted an HSK asking for Colgate toothpaste based on Dr. Rao's HSR. *See* Dkt. 30-1 at 50. A day later, nondefendant W. McCullum, DDS, told Plaintiff that he could order Colgate from the commissary and keep it in his cell. *Id.* On July 29, 2019, Plaintiff submitted an HSK stating that it was "indisputable" that the only brand of toothpaste available to him in the commissary was Oraline Secure. *Id.* at 49. Dr. McCullum told him that he would discuss his case with the "Dental Director." *Id.* On August 4, 2019, Plaintiff submitted an HSK raising the same concern. *Id.* at 48. The following day, Dr. McCullum stated that he issued an HSR allowing Plaintiff to "access . . . Colgate toothpaste from the commissary list." *Id.* On August 6, 2019, Plaintiff submitted an HSK stating that this HSR was worthless because Oraline Secure was the only brand available at the commissary. *Id.* at 47. In response, Dr. McCullum stated that, until Plaintiff got his Colgate toothpaste, he could "remove plaque and food deb[ris] from [his] teeth with a toothbrush and water." *Id.*

The evidence indicates that the HSR Dr. McCullum issued in early August 2019 for Colgate toothpaste expired on October 2, 2019. *See* Dkt. 30-1 at 5, 48. Plaintiff has not argued otherwise. *See* Dkt. 33 at 4–5. So a reasonable juror could only conclude that both of Plaintiff's HSRs for Colgate expired on October 2, 2019. *See* Dkt. 27 at 54; Dkt. 30-1 at 7, 48.

Plaintiff arrived at SCCC's IMU on August 26, 2019. Dkt. 30 ¶ 3. On August 27, 2019, Plaintiff submitted an HSK asking for an "alternative brand" of toothpaste because Oraline Secure was the only brand available at the commissary and he allegedly was allergic to it. Dkt. 27 at 28. On September 3, 2019, Defendant Dr. Hoag stated in response: "The brush does the work not the toothpaste. [C]ontinue 'dry' brushing." *Id.*

On September 12, 2019, Plaintiff submitted an HSK stating that brushing with water was inadequate because "toothpaste is an essential hygiene product and prevents decay and cavities."

1 | *Id.* 30. Plaintiff added: "I struggle with peri[o]dontal and [gingival] inflammation and need
2 | toothpaste to fight it off." *Id.* On September 16, 2019, Defendant Dr. Hoag directed Plaintiff to
3 | continue dry brushing and stated that periodontal disease was bacterial problem and that
4 | toothpaste was not antibacterial. *Id.*

5 |       On September 26, 2019, Plaintiff submitted an HSK complaining that he did not have an
6 | alternative brand of toothpaste and stating that his lack of the same was "causing an increasing
7 | amount of significant pain throughout [his] teeth and gums." *Id.* at 32. Defendant Dr. Hoag
8 | responded, "Same answer." *Id.*

9 |       On October 10, 2019, Plaintiff submitted an HSK again stating that he wanted toothpaste
10 | and complaining of worsening tooth and gum pain. *Id.* at 34. On October 14, 2019, Defendant
11 | Dr. Hoag responded that Plaintiff would be scheduled for a dental examination. *Id.*

12 |       On October 18, 2019, Plaintiff submitted an HSR requesting that his upcoming dental
13 | appointment be "conducted by an outside dentist." *See id.* at 36. The same day, Defendant Taylor
14 | responded: "We would like to do an exam before we recommend any referrals." *Id.*

15 |       On October 21, 2019, Plaintiff again stated in an HSR that he was allergic to Oraline
16 | Secure and asked for "a substitute brand." *Id.* at 38. Two days later, Defendant Dr. Hoag
17 | responded that Plaintiff had an upcoming dental appointment to evaluate his needs. *Id.*

18 |       On October 24, 2019, Plaintiff submitted an HSR stating that toothpaste is a "basic
19 | hygiene item" and he should not have to wait for his "upcoming dental appointment . . . [in] 15
20 | days" to receive it. *Id.* at 40. On October 28, 2019, Defendant Taylor responded that Plaintiff
21 | could "still use the regular toothpaste" and that an appointment would be scheduled for "the very
22 | near future." *Id.*

23 |

24 |

1        One day later, Plaintiff stated in an HSR that he could not use the regular toothpaste

2    because Oraline Secure was the only toothpaste available to him "via the IMU commissary" and

3    he was allergic to it. *Id.* at 42. On October 29, 2019, Defendant Dr. Hoag responded: "When you

4    have an exam and there is medical need, then your request will be evaluated. Just because you

5    want to be released from prison[] doesn't mean the doors will be opened for you." *Id.*

6        On November 2, 2019, Plaintiff submitted an HSK stating that he would participate in his

7    upcoming dental examination because his breath stank and his gums hurt. *Id.* at 48. Plaintiff also

8    asked for an X-ray to check for cavities. *Id.* Three days later, Defendant Dr. Hoag responded that

9    he had been scheduled. *Id.*

10       On November 8, 2019, Defendant Dr. Hoag examined Plaintiff. Dkt. 31 ¶ 7; Dkt. 27 at

11   50, 52. Regarding this appointment, Defendant Dr. Hoag declares: "I reviewed causes and

12   consequences of periodontal disease and oral cavities with [Plaintiff]. We also discussed sulcular

13   brushing and the need for flossing. My examination revealed no evidence of mucosal

14   inflammation—generalized or an adverse response to food or toothpaste. I also reviewed

15   [Plaintiff's] medical/dental file and there is no documentation by any provider that he had an

16   adverse reaction to OraLine Secure Care Toothpaste." Dkt. 31 ¶ 7.

17       Plaintiff does not dispute that Defendant Dr. Hoag examined him and determined that

18   there was no evidence of mucosal inflammation or an adverse response to food or toothpaste. *See*

19   Dkt. 33 at 15–16. Rather, he contends that Defendant Dr. Hoag's findings were unacceptable

20   because he had not been brushing his teeth with Oraline Secure prior to the examination. *See id.*

21   Furthermore, Plaintiff appears to dispute Defendant Dr. Hoag's statement that there was no

22   medical documentation of an adverse reaction to Oraline Secure based on Plaintiff's HSRs for

23   Colgate. *See id.* at 16.

24

1    Plaintiff also notes that, at the November 8, 2019 examination, Defendant Dr. Hoag

2    diagnosed Plaintiff with perio-gingivitis and "min calc." *Cf.* Dkt. 33 at 15; Dkt. 27 at 50.[3]

3    However, Plaintiff does not explain the significance of these findings. *See* Dkt. 33 at 15. Plaintiff

4    may be attempting to attribute these conditions to his dry brushing. But nondefendant J.

5    McDaniel, DDS, diagnosed Plaintiff with gingivitis and "slight calculus" on September 21, 2016,

6    well before Plaintiff complained about a lack of toothpaste. Dkt. 30-2 at 28. Furthermore, the

7    Court cannot find in the record any medical records attributing Plaintiff's "Periodontal-gingival

8    disease" to a lack of toothpaste or otherwise suggesting a causal link between this condition and

9    Plaintiff's lack of toothpaste. *See, e.g.*, Dkt. 30-2 at 20. On this record, no reasonable juror could

10    conclude that Plaintiff's dry brushing caused this condition.

11    On November 14, 2019, Plaintiff submitted an HSK to "HSM K. Parris" complaining

12    about his lack of toothpaste. *Id.* at 56. On December 12, 2019, Defendant Taylor advised him to

13    kite or work with his providers. *Id.* Plaintiff was transferred from SCCC on December 9, 2019.

14    Dkt. 30 ¶ 2.

15    On October 18, 2019, Plaintiff grieved Defendants' alleged failure to provide him with a

16    nonallergy alternative to Oraline Secure. *See* Dkt. 31-1 at 2. After a delay irrelevant here,

17    nondefendant Roanna Cole denied the grievance. *Id.* at 7. She reasoned: "Toothpaste does not

18    meet the definition of medical necessity . . . in the DOC health plan. You were seen by a dental

19    provider on 11/8/19 and no urgent dental conditions were identified. . . . You have since

20    transferred to MCC and [have] been receiving dental care." *Id.*

21

22

23

24    [3] "Min" calc refers to minimum "calculus" (i.e., slight tartar). *See* https://www.merriam-webster.com/dictionary/calculus (considering entry 3b); Dkt. 30-2 at 20, 22.

Plaintiff appealed. *Id.* at 8. He contended that, even if toothpaste was medically

unnecessary, it was a "personal hygiene item" to which he was entitled "as a basic human need."

*Id.*

On December 9, 2020, nondefendant J. McDaniel, Chief of Dentistry, denied his appeal.

*Id.* at 10–11. Dr. McDaniel stated that "Oraline Secure . . . is provided in IMU[s] across [the]

DOC . . . and is an ADA accepted fluoride toothpaste." *Id.* at 10. Dr. McDaniel further stated that

one of the "best ways to control plaque is by brushing your teeth thoroughly at least twice a day"

and that "[y]ou do not need toothpaste to do this" because a "soft toothbrush and good brushing

techniques will [suffice]." *Id.* at 11. Additionally, Dr. McDaniel stated: "In review of your dental

record from 2018 to present there are no notes indicating clinical signs of any allergic reactions

by the two dentists that have evaluated your oral cavity and lips." *Id.* Dr. McDaniel "encourage[d]

Plaintiff] to continue brushing . . . without the facility provided toothpaste until [he] return[ed] to

[the] general population and [could] purchase the brand of toothpaste that [he] prefer[red]." *Id.*

On February 18, 2020, while at MCC-SOU, Dr. Weber restored Plaintiff's #3 tooth. Dkt.

30-2 at 6.

Prisoner Jackson declares that he was housed in SCCC's IMU from September 2019 to

September 2020. Dkt. 33 at 33. Jackson further declares that, while there, Defendant Hoag

approved "daily provisions of sodium fl[u]oride mouthwash as a nonallergy alternative to the

IMU's toothpaste." *Id.* Jackson adds that he so informed Plaintiff in November 2019. *Id.*

Defendants do not directly dispute these statements but question their reliability.

Defendant Taylor declares that, as an HSM, his "job duties include supervision of

administrative staff assigned to the prison's medical unit as well as administrative and clerical

support of the medical unit." Dkt. 30 ¶ 2. Defendant Taylor further declares that HSMs "do not

1    have the education or training to make decisions medically necessary treatment." *Id.* He adds that

2    "[d]ecisions regarding diagnosis and treatment are left to the appropriate medical provider." *Id.*

3    Plaintiff does not clearly dispute these assertions but contends that, because he responded to his

4    HSKs, Defendant Taylor could have provided a nonallergy toothpaste. *See* Dkt. 33 at 22.

5                              **EIGHTH AMENDMENT (Inadequate Medical Care)**

6              To prevail on an Eighth Amendment claim predicated on the denial of medical care, a

7    plaintiff must show that: (1) he had a serious medical need; and (2) the defendant's response to

8    the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

9    *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To establish a serious medical need, the

10   plaintiff must show that the "failure to treat [the] . . . condition could result in further significant

11   injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096 (citation

12   omitted). "The existence of an injury that a reasonable doctor or patient would find important

13   and worthy of comment or treatment; the presence of a medical condition that significantly

14   affects an individual's daily activities; or the existence of chronic and substantial pain are

15   examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v.*

16   *Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc.*

17   *v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

18             "Dental care is one of the most important medical needs of inmates." *Hunt v. Dental*

19   *Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citation omitted). Delays in dental treatment that cause

20   serious dental problems and/or serious pain present objectively serious medical needs. *See id.*

21   Such serious dental problems may include cavities/tooth decay. *See Berry v. Peterman*, 604 F.3d

22   435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition

23   because of pain and the risk of infection." (citations omitted)); *Harrison v. Barkley*, 219 F.3d

24

132, 137 (2d Cir. 2000) ("[B]ecause a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a 'serious medical need' within the meaning of our case law.").

Here, a reasonable juror could conclude that Plaintiff had an objectively serious medical need for a nonallergy alternative to Oraline Secure. Plaintiff contends that Oraline Secure caused his gums to bleed and clusters of sores to form in his mouth. *See* Dkt. 27 at 5, 25 (Plaintiff's declaring that he was allergic to Oraline Secure); Dkt. 30-1 at 48, 64; *see also* Dkt. 30-1 at 67 (Dr. Bassham stating that some toothpastes may cause allergic reactions). In response to Plaintiff's complaints about this alleged allergic reaction, Drs. Rao and Bassham issued HSRs for Colgate. *See id.* at 48, 64. While these HSRs are not formal diagnoses, they may support a reasonable inference that a nonallergy alternative to Oraline Secure was medically necessary. *Compare Goodall v. Jacobson*, No. CV-08-5023-CI, 2010 WL 889965, at *2 (E.D. Wash. Mar. 8, 2010) ("Health Status Reports do not include health diagnoses."), *with Watson v. Washington Dep't of Corr.*, No. C17-5968-BHS-TLF, 2018 WL 7150488, at *1 (W.D. Wash. Nov. 15, 2018) ("DOC officials require that HSRs be medically necessary . . . ."), *report and recommendation adopted*, 2019 WL 399070 (W.D. Wash. Jan. 31, 2019).

Furthermore, the evidence supports a reasonable inference that Plaintiff did not have a nonallergy alternative toothpaste after July 14, 2018, when Dr. Bassham told him to stop using Oraline Secure. Dkt. 30-1 at 76. After that time, Plaintiff repeatedly complained of dental problems and pain and was diagnosed with cavities in tooth #2 and tooth # 3. *See, e.g.*, Dkt. 30-1 at 32, 34, 48, 64; Dkt. 30-2 at 14–16, 19, 22. Plaintiff eventually had tooth # 2 extracted and tooth # 3 restored. Dkt. 30-2 at 6, 14. That Plaintiff received these procedures supports a reasonable inference that the alleged pain associated with his tooth decay was significant. And

there is evidence that "toothpaste helps prevent decay because it contains [f]luoride." *See* Dkt. 30-1 at 19; *see also Berry*, 604 F.3d at 440; *Barkley*, 219 F.3d at 137; *Board v. Farnham*, 394 F.3d 469, 482 (7th Cir. 2005) ("[T]oothpaste[] . . . prevents future potentially serious dental problems such as tooth decay . . . ."). Therefore, drawing all reasonable inferences in Plaintiff's favor, a reasonable juror could conclude that Plaintiff's deprivation of a nonallergy alternative toothpaste caused or worsened his tooth decay and alleged dental pain.

The evidence also supports a reasonable finding that Plaintiff was deprived of a nonallergy alternative toothpaste for a significant amount of time. Again, the evidence supports a reasonable inference that Plaintiff did not have a nonallergy alternative toothpaste after July 14, 2018. Dkt. 30-1 at 76. Likewise, the evidence shows that this deprivation continued through Plaintiff's departure from SCCC's IMU on December 9, 2019. Dkt. 30 ¶ 2; Dkt. 30-1 at 56. Thus, the evidence supports a reasonable finding that Plaintiff was deprived of a nonallergy alternative toothpaste for at least 513 days. A reasonable juror could find this delay significant. *See Hunt*, 865 F.2d at 201 (three-month delay in treating serious dental problems that caused prisoner "to suffer unnecessary and wanton . . . pain" supported deliberate indifference claim).

Defendants contend that Plaintiff does not have an objectively serious medical need because "no provider has ever diagnosed an actual allergy." Dkt. 34 at 4. However, Defendants disregard the fact that two dentists issued HSRs in response to Plaintiff's complaints of an allergic reaction to Oraline Secure. Dkt. 27 at 54; Dkt. 30-1 at 48, 64. Defendants also disregard Dr. Bassham's statement some toothpastes may cause allergic reactions. Dkt. 30-1 at 67. Furthermore, "[P]laintiff asserts[] that he did not use the [Oraline Secure] toothpaste[] and therefore [] was not experiencing an allergic reaction when he was examined by any providers." *Jackson v. Dep't of Corr. Washington*, No. C16-1856-RAJ-MAT, 2018 WL 1867124, at *7

1    (W.D. Wash. Feb. 22, 2018), *report and recommendation adopted*, 2018 WL 1836777 (W.D.

2    Wash. Apr. 18, 2018). Whether to discount the probative force of the HSRs because they are not

3    formal medical diagnoses, and whether to discount any formal medical findings because Plaintiff

4    was not using Oraline Secure during those examinations, are factual questions for the jury.

5          Defendants also contend that Defendant Dr. Hoag and "all of [his] previous and

6    subsequent treating dental providers [told Plaintiff] that toothpaste . . . would [not] have

7    prevented [his] dental cavities and issues." *See* Dkt. 29 at 12. Defendants add: "The records show

8    that [Plaintiff] arrived [at] DOC custody with multiple dental issues as some of his dental

9    requests involve replacement of fillings and cavities he had received prior to his incarceration."

10   *Id.*

11         As noted, however, there is evidence that "toothpaste helps prevent decay because it

12   contains [f]luoride." *See* Dkt. 30-1 at 19; *see also Berry*, 604 F.3d at 440; *Barkley*, 219 F.3d at

13   137; *Board*, 394 F.3d at 482. Furthermore, as discussed, the evidence supports a reasonable

14   inference that the decay in tooth # 2 and tooth #3 developed—or worsened—after Plaintiff was

15   told to discontinue Oraline Secure on July 14, 2018. *See* Dkt. 30-1 at 32, 34, 48, 64, 76; Dkt. 30-

16   2 at 6, 14–16, 19, 22. True, Defendants submitted a medical record showing that, on August 16,

17   2017, Defendant Dr. Hoag referenced tooth #2 during an evaluation of Plaintiff. Dkt. 30-2 at 25.

18   However, the handwriting of his treatment note is not fully legible; it is unclear whether it notes

19   decay in tooth #2. *See id.* Even if it does, the evidence supports a reasonable inference that the

20   decay in tooth # 2 worsened after July 14, 2018. *See* Dkt. 30-1 at 64; 30-2 at 15–16, 22. And the

21   Court did not find any references to the cavity in tooth # 3 earlier than December 10, 2018. Dkt.

22   30-2 at 16, 19. Dr. Weber made this finding nearly five months after July 14, 2018, i.e., when

23   Plaintiff inferably stopped using Oraline Secure. Because courts have recognized that toothpaste

24

prevents decay, and because there is evidence of the same, a juror could reasonably infer that the cavity in tooth # 3 developed in the five-month period after July 14, 2018 and was caused by the deprivation of a nonallergy toothpaste.

Similarly, Defendants contend that "every dental provider informed [Plaintiff] that in order to maintain proper dental hygiene, he simply needed to brush his teeth with his toothbrush and water." Dkt. 34 at 3 (citations omitted); *see also* Dkt. 29 at 2–6, 12. Again, however, there is evidence supporting a reasonable inference that Plaintiff brushed his teeth with water but that this hygiene did not stop the decay in tooth # 2 and tooth # 3 from developing or worsening. Furthermore, one of the dentists that so instructed Plaintiff, Dr. Bassham, stated that toothpastes may cause allergies and issued an HSR for Colgate. It is the jury's role to decide what aspects of his statements and findings to credit or discredit. And there is no evidence that Dr. Rao, who issued the one-year HSR for Colgate, instructed Plaintiff that he could maintain dental health simply by dry brushing. *See* Dkts. 30-1, 30-2. Assuming the dentists' instructions that Plaintiff could maintain dental health by dry brushing undermines the contention he had a serious medical need, it is proper for the jury to weigh these findings against Dr. Rao's arguably contrary finding.

Moreover, Defendants admitted in their discovery responses that, under DOC regulations, "personal hygiene items" "are used to promote or preserve [a prisoner's] health and [] contribute to the prevention of disease or infection" and that toothpaste is a personal hygiene item. Dkt. 33 at 29–30, 43, 45 (citations and internal quotation marks omitted). Together with the rest of the evidence, this admission supports a reasonable inference that dry brushing was not sufficient for Plaintiff to maintain dental health for long periods.

Defendants further argue that Plaintiff's allegation that he is allergic to Oraline Secure is incredible because he entered DOC custody in 2016 and did not complain about this allergy until

2018. *See* Dkt. 29 at 2. Likewise, Defendants contend that Plaintiff "suddenly claims he became allergic" to Oraline Secure "after being housed next to inmate Jackson." Dkt. 34 at 4. Such credibility determinations are not proper on summary judgment. *See, e.g.*, *T.W. Elec. Serv.*, 809 F.2d at 631.

In sum, drawing all reasonable inferences in Plaintiff's favor, a reasonable juror could conclude that Plaintiff had an objectively serious medical need for a nonallergy alternative toothpaste to Oraline Secure.

For a prison official's response to a serious medical need to be deliberately indifferent, the official must "'know[] of and disregard[] an excessive risk to inmate health.'" *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

It is well-established that "a mere difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *See, e.g.*, *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alterations in original) (citation omitted). This rule applies whether the difference is between medical professional(s) and a prisoner or two or more medical professionals. *See, e.g.*, *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted).

In appropriate cases, however, a prisoner may state a claim of deliberate indifference to medical needs based on a difference of medical opinion. To do so, the prisoner must show that "the course of treatment the doctors chose was medically unacceptable under the circumstances," and that they "chose this course in conscious disregard of an excessive risk to [the prisoner's]

1 health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted), *overruled on*

2 *other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). Under this rule, for

3 instance, denying a prisoner medical treatment based on "personal animosity" rather than

4 "honest medical judgment" would constitute deliberate indifference. *See id.*

5       Here, a reasonable juror could not conclude that Defendant Taylor was deliberately

6 indifferent to Plaintiff's serious medical need. Defendant Taylor declares, and Plaintiff has not

7 meaningfully disputed, that he had an administrative position at SCCC and did not have the

8 education or training to make decisions regarding medical diagnosis and treatment and left such

9 decisions to providers. "Prison officials who are not medical providers are not deliberately

10 indifferent when they defer to the judgment of treating medical providers." *Jackson v. Thrasher*,

11 No. 3:20-CV-5016-BHS-DWC, 2021 WL 1967944, at *7 (W.D. Wash. Apr. 13, 2021) (citing

12 *Peralta v. Dillard*, 744 F3d 1076, 1086–87 (9th Cir. 2014); *Hayes v. Snyder*, 546 F.3d 516, 526–

13 28 (7th Cir. 2008); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)), *report and*

14 *recommendation adopted*, 2021 WL 1964224 (W.D. Wash. May 17, 2021).

15       However, a reasonable juror could conclude that Defendant Dr. Hoag was deliberately

16 indifferent to Plaintiff's need for a nonallergy alternative to Oraline Secure. Prisoner Jackson

17 declares that he was in SCCC's IMU at the same time as Plaintiff and that, while there,

18 Defendant Dr. Hoag provided him with "daily provisions of sodium fl[u]oride mouthwash as a

19 nonallergy alternative to the IMU's toothpaste." Dkt. 33 at 33. This statement, which Defendant

20 Dr. Hoag has not directly disputed, supports a reasonable inference that he considered fluoride

21 mouthwash an appropriate alternative to Oraline Secure for prisoners allergic to the latter. *See*

22 *id.*; *see also Jackson v. Dep't of Corr. Washington*, No. C16-1856-RAJ-MAT, 2018 WL

23 1867124, at *6 (W.D. Wash. Feb. 22, 2018) (stating that "fluoride rinse" is a "viable toothpaste

24

1   option"), *report and recommendation adopted*, 2018 WL 1836777 (W.D. Wash. Apr. 18, 2018).

2   Furthermore, in response to Plaintiff's October 29, 2019 HSK stating he was allergic to Oraline

3   Secure, Defendant Dr. Hoag in part stated: "Just because you want to be released from prison[]

4   doesn't mean the doors will be opened for you." Dkt. 30-1 at 42. Coupled with prisoner

5   Jackson's declaration, this statement supports a reasonable inference that Defendant Dr. Hoag

6   based his decision to recommend dry brushing and not provide Plaintiff with fluoride mouthwash

7   on personal animosity, not honest medical judgment. True, there is much evidence that

8   Defendant Dr. Hoag based his decision to recommend dry brushing on his medical judgment and

9   examination of Plaintiff. But it is the jury's role to resolve this genuine factual dispute.

10       Defendant Dr. Hoag invokes qualified immunity. Dkt. 29 at 14–15; Dkt. 34 at 4–6.

11  Qualified immunity protects government officials from liability for civil damages where a

12  reasonable official would not have known that his conduct violated a clearly established right.

13  *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987). In resolving questions of qualified

14  immunity, "courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865

15  (2014) (per curiam). "The first asks whether the facts, taken in the light most favorable to the

16  party asserting the injury, . . . show the officer's conduct violated a federal right." *Id.* (citation

17  and bracketing omitted). "The second prong . . . asks whether the right in question was clearly

18  established at the time of the violation." *Id.* at 1866 (citation omitted).

19       A right is "clearly established" when "the contours of the right [are] sufficiently clear that

20  a reasonable official would understand that what he is doing violates that right." *Anderson*, 483

21  U.S. at 640. In the Ninth Circuit, to assess whether a right is clearly established, courts first look

22  to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House,*

23  *Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citation omitted).

24

1    In 1989, the Ninth Circuit established in *Hunt* that delays in dental care that cause serious

2  dental problems and/or serious pain present objectively serious medical needs. *See Hunt*, 865

3  F.2d at 200. This holding is consistent with the principle, established three years later in

4  *McGuckin*, that "[a] 'serious' medical need exists if the failure to treat a prisoner's condition

5  could result in further significant injury or the 'unnecessary and wanton infliction of pain'" 974

6  F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Additionally, in 1996, the Ninth Circuit

7  established in *Jackson* that denying a prisoner treatment based on personal animosity would

8  constitute deliberate indifference. 90 F.3d at 332.

9    Here, as discussed, a reasonable juror could conclude that Plaintiff's lengthy deprivation

10  of a nonallergy alternative to his allegedly allergy-causing toothpaste caused—or worsened—his

11  tooth decay and caused him serious pain. Furthermore, a reasonable juror could conclude that

12  Defendant Dr. Hoag refused to provide Plaintiff with an appropriate alternative to his allergy-

13  causing toothpaste based on personal animosity, not honest medical judgment. Considering this

14  "binding precedent," *see Cmty. House*, 623 F.3d at 967, Defendant Dr. Hoag does not enjoy

15  qualified immunity on Plaintiff's medical deliberate indifference claim.

16            **EIGHTH AMENDMENT (Inadequate Personal Hygiene)**

17    The Eighth Amendment protects prisoners from inhumane methods of punishment and

18  inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

19  2006). Where the plaintiff challenges his conditions of confinement, he must make two

20  showings. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "First, the plaintiff must make an

21  'objective' showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth

22  Amendment violation." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Second, the

23

24

1  plaintiff must make a 'subjective' showing that the prison official acted 'with a sufficiently

2  culpable state of mind.'" *Id.* (quoting *Wilson*, 501 U.S. at 298).

3      Objectively, "only those deprivations denying the minimal civilized measure of life's

4  necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*

5  *v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted). "This requires the inmate to demonstrate

6  'conditions posing a substantial risk of serious harm' that present an 'excessive risk to his health

7  or safety.'" *Norbert v. City & Cty. of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) (alteration

8  adopted) (quoting *Farmer*, 511 U.S. at 837). "Indigent inmates have the right to personal hygiene

9  supplies such as toothbrushes . . . ." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *opinion*

10 *amended on denial of reh'g on other grounds*, 135 F.3d 1318 (9th Cir. 1998). Where its

11 deprivation is lengthy and causes prisoners dental problems, the right to personal hygiene

12 includes toothpaste. *See Flanory v. Bonn*, 604 F.3d 249, 256 (6th Cir. 2010) (337-day

13 deprivation that allegedly caused periodontal disease and tooth extraction); *Penrod v. Zavaras*,

14 94 F.3d 1399, 1406 (10th Cir. 1996) (per curiam) (69-day deprivation that allegedly caused tooth

15 decay and gum bleeding and recission); *see also Board*, 394 F.3d at 482–84 (A deprivation of

16 toothpaste for 3.5 weeks causing severe tooth decay, and a separate 113-day deprivation of

17 toothpaste, violated respective prisoners' right to "proper personal hygiene items as preventative

18 of future medical and physical harm" (citations omitted)).

19     Here, a reasonable juror could conclude that Plaintiff had an objectively serious need for

20 a nonallergy alternative to Oraline Secure to maintain personal hygiene. As discussed, the

21 evidence supports a reasonable finding that Plaintiff experienced a lengthy deprivation of a

22 nonallergy alternative to Oraline Secure that caused—or worsened—his tooth decay and caused

23 him serious pain. On these alleged facts, a reasonable juror could conclude that the right to

24

1  personal hygiene included toothpaste. *See Flanory*, 604 F.3d at 256; *Penrod*, 94 F.3d at 1406;

2  *Board*, 394 at 482–84.

3      Regarding the subjective prong, the analysis is essentially the same as the analysis of

4  Plaintiff's medical deliberate indifference claim. Again, the evidence supports a reasonable

5  inference that Defendant Dr. Hoag considered fluoride mouthwash an appropriate alternative to

6  Oraline Secure for prisoners allergic to the latter but refused to provide Plaintiff with it out of

7  personal animosity. So a reasonable juror could conclude that he was deliberately indifferent to

8  Plaintiff's right to personal hygiene.

9      By contrast, no reasonable juror could conclude that Defendant Taylor was deliberately

10  indifferent to Plaintiff's right to a nonallergy alternative to Oraline Secure to maintain personal

11  hygiene. "Prison officials who are not medical providers are not deliberately indifferent when

12  they defer to the judgment of treating medical providers." *Thrasher*, No. 3:20-CV-5016-BHS-

13  DWC, 2021 WL 1967944, at *7 (citations omitted). There is no evidence supporting a

14  reasonable finding that Defendant Taylor could have authorized an alternative toothpaste or

15  mouthwash or was otherwise "responsible for" this determination. *See McGuckin*, 974 F.2d at

16  1062.

17      Defendant Dr. Hoag does not enjoy qualified immunity on Plaintiff's inadequate personal

18  hygiene claim. As stated above, a right is "clearly established" when "the contours of the right

19  [are] sufficiently clear that a reasonable official would understand that what he is doing violates

20  that right." *Anderson*, 483 U.S. at 640. In the Ninth Circuit, to assess whether a right is clearly

21  established, courts first look to "Supreme Court and Ninth Circuit law existing at the time of the

22  alleged act." *Cmty. House*, 623 F.3d at 967. Absent binding precedent, courts should consider all

23

24

1  relevant decisional law. *See Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985) (citation

2  omitted).

3      In 1996, the Ninth Circuit established in *Keenan* that prisoners have a right to

4  toothbrushes, which promote dental hygiene. *See* 83 F.3d at 1091. Although the Ninth Circuit

5  has yet to establish that the right to dental hygiene includes toothpaste, other circuits have held

6  that the right to personal hygiene includes toothpaste where, as alleged here, its deprivation is

7  lengthy and causes prisoners dental problems. *See Penrod*, 94 F.3d at 1406; *Flanory*, 604 F.3d at

8  256; *Board*, 394 F.3d at 482–84. Likewise, a district judge for this Court denied a motion for

9  summary judgment where, like here, the prisoner alleged a deprivation of "IMU toothpaste" for

10  11 to 12 months without a "viable toothpaste option" such as "fluoride rinse." *See Jackson*, 2018

11  WL 1867124, at *6–7, *adopted*, 2018 WL 1836777. These cases are factually similar and were

12  decided (respectively, 1996, 2005, 2010 and April 2018) before the events underlying Plaintiff's

13  inadequate personal hygiene claim allegedly occurred. Thus, they sufficed to give Defendant Dr.

14  Hoag "fair warning that [his] alleged treatment of [Plaintiff] was unconstitutional." *See Hope v.*

15  *Pelzer*, 536 U.S. 730, 741 (2002). Consequently, Defendant Dr. Hoag does not enjoy qualified

16  immunity on this claim.

17                                    **EQUAL PROTECTION**

18      Plaintiff alleges that Defendant Dr. Hoag violated equal protection because he refused

19  Plaintiff's request for a nonallergy alternative to Oraline Secure but provided such an alternative

20  to prisoner Jackson. Dkt. 27 at 19–20. Plaintiff does not assert this claim against Defendant

21  Taylor. *See id.*

22      "The Equal Protection Clause of the Fourteenth Amendment commands that no State

23  shall deny to any person within its jurisdiction the equal protection of the laws, which is

24

1  essentially a direction that all persons similarly situated should be treated alike." *City of*

2  *Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation and internal quotation

3  marks omitted). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection

4  Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an

5  intent or purpose to discriminate against the plaintiff based upon membership in a protected

6  class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citation omitted).

7       Here, there is no evidence that Plaintiff was a member of a protected class. So no

8  reasonable juror could conclude that Defendant Dr. Hoag intentionally discriminated against him

9  based on such membership. Yet this conclusion does not end the equal protection inquiry.

10      "Where . . . state action does not implicate a . . . suspect classification, the plaintiff can

11  establish a 'class of one' equal protection claim by demonstrating that it 'has been intentionally

12  treated differently from others similarly situated and that there is no rational basis for the

13  difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004)

14  (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

15      The Court declines to consider whether the evidence supports a reasonable finding that

16  Defendant Dr. Hoag violated equal protection under a class-of-one theory. Instead, the Court

17  considers whether he enjoys qualified immunity on this claim. *See Mueller v. Auker*, 576 F.3d

18  979, 994 (9th Cir. 2009) ("[A] court may proceed to the second prong of the [qualified

19  immunity] analysis without addressing the first . . . ." (citation omitted)).

20      Here, as discussed, the evidence supports a reasonable finding that Defendant Dr. Hoag

21  provided prisoner Jackson with a nonallergy alternative (fluoride mouthwash) to his allergy-

22  causing toothpaste based on his medical judgment but refused to provide Plaintiff with the same

23  out of personal animosity. The question, then, is whether it was clearly established as of August

24

27, 2019 (i.e., Plaintiff's arrival to SCCC's IMU) that this conduct violated equal protection under a class-of-one theory. As explained below, it was not.

In 2000, the Supreme Court "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564 (citations omitted). In 2004, applying *Olech*, the Ninth Circuit stated that "[w]here an equal protection claim is based on selective enforcement of valid laws, a plaintiff can show that the defendants' [alleged] rational basis for selectively enforcing the law is a pretext for an impermissible motive [such as personal animosity]." *See Squaw Valley*, 375 F.3d at 944, 947 (citations and internal quotation marks omitted).

Taken at face value, these principles may support a reasonable finding that Defendant Dr. Hoag violated equal protection under a class-of-one theory. For the evidence supports reasonable inferences that: (1) Defendant Dr. Hoag treated Plaintiff differently by not providing him mouthwash; (2) Plaintiff and prisoner Jackson were similarly situated because they were both prisoners in SCCC's IMU who were allergic to Oraline Secure; and (3) Defendant Dr. Hoag's proffered rational basis for failing to provide Plaintiff with a nonallergy alternative to Oraline Secure, his medical judgment, was pretextual because he based his decision on personal animosity.

However, the facts in *Olech* and *Squaw Valley* are substantially different from those here. *Olech* "involved the government's regulation of property." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008). "Similarly, the cases upon which . . . *Olech* relied concerned property assessment and taxation schemes." *Id.* (citations omitted). The Supreme Court "expect[s] such legislative or regulatory classifications to apply without respect to persons . . . ." *Id.* (citation

omitted). "What seems to have been significant in *Olech* and the cases on which it relied was the existence of a *clear standard* against which departures, even for a single plaintiff, could be readily assessed." *Id.* (emphasis added). Similar to *Olech*, *Squaw Valley* involved the regulatory enforcement of water quality laws against a developer that discharged waste into a river. *See* 375 F.3d at 938, 947.

Declining to extend *Olech* to public employment decisions, *Engquist* reasoned that "[t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *See id.* at 603, 609. "In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id.*

Applying *Engquist*, the Ninth Circuit has held that, "[a]bsent any *pattern of generally exercising* the discretion in a particular manner while treating one individual differently and detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory." *Towery v. Brewer*, 672 F.3d 650, 660–61 (9th Cir. 2012) (emphasis added). "At the very least, there must be some respect in which the discretion is being exercised so that the complaining individual is being treated less favorably than *others generally are*." *Id.* at 661 (emphasis added).

The Ninth Circuit has published very few decisions finding violations of equal protection under a class-of-one theory. *See Squaw Valley*, 375 F.3d at 947; *see also Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1023–25 (9th Cir. 2011); *Valley Outdoor, Inc. v. City of Riverside*, 446 F.3d 948, 955 (9th Cir. 2006). However, like *Squaw Valley* (and *Olech*), *Gerhart* and *Valley Outdoor* involve regulation of property limiting "access to a public resource." *See Gerhart*, 637

1  at 1014–15, 1025 (denial of permit applications for road approaches); *Valley Outdoor*, 446 F.3d

2  at 949–51, 955 (denial of permit applications to build billboards near a freeway).

3         These cases do not clearly establish that a prison dentist violates equal protection by

4  refusing, out of animosity, a prisoner's request for a nonallergy alternative to an allergy-causing

5  toothpaste even though that dentist has provided such an alternative to another, similarly situated

6  prisoner.[4] Arguably, a dentist's treatment decisions are more akin to the discretionary decisions

7  in *Engquist* than the regulatory schemes in *Olech*, *Squaw Valley*, *Gerhart*, and *Valley Outdoor*.

8  And, as in *Towery*, the evidence does not support a reasonable inference that Defendant Dr.

9  Hoag "generally" prescribed fluoride mouthwash to prisoners allergic to Oraline Secure and

10 treated only Plaintiff "differently and detrimentally." *See* 672 F.3d at 660–61. Rather, the only

11 evidence is that Defendant Dr. Hoag provided treatment to *one* prisoner that he failed to provide

12 to another, similarly situated prisoner.

13        True, the evidence supports a reasonable inference that he so acted out of animosity. But,

14 again, *Squaw Valley* involved the selective enforcement of regulatory law, not dental treatment

15 decisions. *See* 375 F.3d at 944, 947. The former case involves "legislative or regulatory"

16 schemes that may set a "clear standard against which departures . . . [can] be readily assessed."

17 *Cf. Engquist*, 553 U.S. at 602. Defendant Dr. Hoag did not face these "particular circumstances."

18 *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

19        The Court recognizes that Defendants admitted in their discovery responses that, under

20 DOC regulations, "personal hygiene items" "are used to promote or preserve [a prisoner's]

21 health and [] contribute to the prevention of disease or infection" and that toothpaste is a personal

22

23 _____

24       [4] Nor did the Court find any other published circuit decisions so holding.

1  hygiene item. Dkt. 33 at 29–30, 43, 45 (citations and internal quotation marks omitted). As

2  discussed, together with the rest of the evidence, this admission supports a reasonable inference

3  that dry brushing was not sufficient for Plaintiff to maintain dental health for long periods. But,

4  standing alone, this admission does not necessarily mean that Defendant Dr. Hoag violated these

5  DOC regulations. And, even if it did, "[o]fficials sued for constitutional violations do not lose

6  their qualified immunity merely because their conduct violates some statutory or administrative

7  provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

8       In sum, a reasonable juror could conclude that Defendant Dr. Hoag provided prisoner

9  Jackson with a nonallergy alternative (fluoride mouthwash) to his allergy-causing toothpaste

10  based on his medical judgment but refused to provide Plaintiff with the same out of personal

11  animosity. The issue is whether it was clearly established as of August 27, 2019 that this

12  "particular conduct" violated equal protection under a class-of-one theory. *See Mullenix v. Luna*,

13  577 U.S. 7, 12 (2015) (citation and emphasis omitted). As explained above, "in light of the

14  specific context of [this] case," it was not. *See id.* Accordingly, Defendant Dr. Hoag enjoys

15  qualified immunity on Plaintiff's class-of-one equal protection claim.

16                                          **ADA**

17       Plaintiff alleges that Defendant Dr. Hoag "acted with deliberate indifference to Plaintiff's

18  requests and needs for a nonallergy toothpaste (a disability)," thus violating the ADA. Dkt. 27 at

19  20. The Parties have not addressed this claim on summary judgment. However, because Plaintiff

20  is proceeding *in forma pauperis* and has sued employees of government entities, the screening

21  provisions of 28 U.S.C. §§ 1915 and 1915(e) apply. *See O'Neal v. Price*, 531 F.3d 1146, 1152

22  (9th Cir. 2008); *Lopez*, 203 F.3d at 1127. Under these screening provisions, the Court may screen

23  a complaint at any time during a case, including where a party as "moved for summary

24

judgment." *Munywe v. Peters*, No. 321CV05431BJRJRC, 2021 WL 5514810, at *4 (W.D. Wash. Nov. 24, 2021) (citing *Byrd v. Maricopa Cty. Sheriff's Dep't*, 565 F.3d 1205, 1212 (9th Cir. 2009)). So the Court will screen Plaintiff's ADA claim.

Plaintiff's ADA claim is not cognizable. Plaintiff asserts it against Defendant Dr. Hoag in his individual capacity. *See* Dkt. 27 at 20–21. But, under the ADA, "[p]laintiffs may sue only a 'public entity' . . . , not government officials in their individual capacities." *Burgess v. Carmichael*, 37 F. App'x 288, 292 (9th Cir. 2002) (citations omitted); *accord Chester v. Univ. of Washington*, No. C11-5937 BHS, 2012 WL 3599351, at *3 & n.1 (W.D. Wash. Aug. 21, 2012). Therefore, Plaintiff's individual-capacity ADA claim against Defendant Dr. Hoag should be dismissed with prejudice.

## DECLARATORY RELIEF

In addition to damages, Plaintiff seeks declaratory relief. Dkt. 27 at 20–21. However, Plaintiff seeks relief exclusively for the alleged past harms of Defendants. *See id.* Plaintiff is no longer incarcerated at SCCC and received Colgate before he filed his amended complaint. Dkt. 30-1 at 2. "Because Plaintiff's claim[] for declaratory relief [is] based on allegations of Defendants' past actions, [the] claim for declaratory relief is improper and in essence is duplicative of Plaintiff's other causes of action." *See Kwai Ling Chan v. Chase Home Loans Inc.*, No. C12-0273JLR, 2012 WL 1252649, at *4 (W.D. Wash. Apr. 13, 2012) (citations omitted). So this claim should be dismissed with prejudice.

## REMAINING MATTERS

Plaintiff has filed a surreply asking the Court to strike two arguments from Defendants' reply brief. Dkt. 35. Plaintiff contends the first argument mischaracterizes one of his arguments and that the second is "extraneous unsupported prejudicial speculation." *Id.* at 1–2.

1    LCR 7(g) allows parties to file surreplies "requesting that the court strike [] material"

2    from a reply brief. However, the first argument does not mischaracterize Plaintiff's argument.

3    Furthermore, the Court addressed—and rejected—the second argument in the above analysis.

4    Although the second argument invited the Court to make a credibility determination, it was not

5    unfairly prejudicial. Accordingly, because it is groundless, the Court denies Plaintiff's request to

6    strike the evidence.

7    Plaintiff has also filed a motion to strike material from Defendants' motion for summary

8    judgment under Fed. R. Civ. P. 12(f). Dkt. 36. Under Rule 12(f), "[t]he court may strike from a

9    pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

10   matter." Courts may act *sua sponte* or "on motion made by a party either before responding to

11   the pleading or, if a response is not allowed, within 21 days after being served with the

12   pleading." Fed. R. Civ. P. 12(f)(1)–(2). Likewise, LCR 7(g) provides that "[r]equests to strike

13   material . . . shall not be presented in a separate motion, but shall instead be included in the

14   responsive brief."

15   Here, Plaintiff did not make his motion before responding to the motion for summary

16   judgment or in his response to the same. So the motion is procedurally improper. Furthermore,

17   Plaintiff has not adequately shown that Defendants mischaracterized evidence and, in any event,

18   his concerns are moot; the Court has recommended denying the motion for summary judgment

19   with respect to Plaintiff's Eighth Amendment claims against Defendant Dr. Hoag. Consequently,

20   the Court denies Plaintiff's motion to strike.

21

22

23

24

REPORT AND RECOMMENDATION AND
ORDER - 29

1

**CONCLUSION**

2       As discussed above, it is **RECOMMENDED** that Defendants' motion for summary

3   judgment (Dkt. 29) be **GRANTED IN PART AND DENIED IN PART**, with the following

4   results:

5       (1)     Summary judgment should be **granted** to Defendants on Plaintiff's Eighth

6   Amendment and equal protection claims against Defendant Taylor.

7       (2)     Summary judgment should be **granted** to Defendants on Plaintiff's equal

8   protection claim against Defendant Dr. Hoag.

9       (3)     Summary judgment should be **denied** on Defendants' Eighth Amendment claims

10  against Defendant Dr. Hoag.

11      It is further **RECOMMENDED** that Plaintiff's ADA claim and request for declaratory

12  relief be **DISMISSED WITH PREJUDICE**.

13      It is further **ORDERED** that Plaintiff's surreply (Dkt. 35) is **DENIED** and that Plaintiff's

14  motion to strike (Dkt. 36) is **DENIED**.

15      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the Parties shall have

16  fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P.

17  6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

18  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

19  of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985);

20  *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating

21  the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on

22  **March 25, 2022** as noted in the caption.

23

24

REPORT AND RECOMMENDATION AND
ORDER - 30

1    Dated this 8th day of March, 2022.

2

3

    _____
4    David W. Christel
    United States Magistrate Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION AND
ORDER - 31